**ANTILLES INSURANCE COMPANY,**
Plaintiff, Appellee,

v.

**TRANSCONEX, INC.,**
Defendant, Appellant.

No. 88–1108.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1988.

Decided Dec. 2, 1988.

Omar Cancio Martinez with whom Law Offices of Trias, Doval, Muñoz, Acevedo & Otero, Hato Rey, P.R., was on brief, for defendant, appellant.

Jose A. Fuentes Agostini with whom Law Offices of Troncoso & Fuentes Agostini, San Juan, P.R., was on brief, for plaintiff, appellee.

Before COFFIN, ALDRICH and BOWNES, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This case is another step in a continuing battle between common carriers and shippers over so-called released value rates, whereby shippers incur lesser obligations, on the basis of a lower rate. *Cf. Federal Ins. Co. v. Transconex, Inc.,* 430 F.Supp.

290 (D.P.R.1976). In this instance a shipper in Chicago, Illinois, shipped 126 cartons of shoes to a consignee in San Juan, Puerto Rico, defendant Transconex, Inc., a non-vessel operating common carrier, being the freight forwarder and party responsible on the bill of lading. Most of the cartons were delivered to the consignee in good order, but some were delivered, at a later date, in bad order, having been damaged while in a warehouse in Puerto Rico. The consignee, having chosen the released value rate that relieved the carrier of all but a small dollar amount, had insured the goods in transit with plaintiff Antilles Insurance Company. Plaintiff paid consignee the loss and sues defendant therefor. It is conceded that, as a subrogee, plaintiff is entitled to the consignee's right, which it says is to recover the full loss, the $50.00 limitation specified under the bill of lading being, it says, illegal. Defendant contests the illegality. The case was tried on stipulated facts and the court found for plaintiff. 672 F.Supp. 61 (D.P.R.1987). Defendant appeals. We reverse.

■ Admittedly the case is governed by the Harter Act, 46 U.S.C.App. § 190 et seq.

It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

The district court held it was also covered by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300–1315, which replaces the Harter Act in some circumstances. *See Tapco Nigeria, Ltd. v. M/V Westwind*, 702 F.2d 1252, 1255 (5th Cir.1983) (COGSA applicable from time goods in international commerce are loaded onto ship until when released from ship's tackle at port); *North River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir.1981) (COGSA applicable when incorporated by contract). It did so by taking judicial notice that all maritime carriers serving Puerto Rico are subject to COGSA. This was error. The bills of lading in the cases the court cited specifically referred to COGSA; defendant's did not.

Defendant contends that by electing to ship under the lower of alternative rates graduated according to value, the shipper estops himself from asserting any liability in excess of the value covered by the rate. Plaintiff's, and the district court's, response is that a standard $50.00 is but a token figure and, in effect, a disclaimer of liability, and that a rate based on a disclaimer is not saved by the availability of a higher rate under which full liability is assumed. The second part of this proposition would be so were the first part correct, but it is not.

In the case at bar defendant offered a rate under which the shipper/consignee would pay for insurance, procured either by the carrier or itself. This, manifestly, was no answer to the Harter Act. The further choice in issue read as follows.

In consideration of the rate charged for carriage being dependent on the value of the goods and being based upon an agreed valuation of not more than $50.00 per shipment, unless a greater value is declared at the time of shipment and an additional charge of one (1%) percent thereof paid, the shipper or owner of the goods agrees that carrier shall not be liable in any event for more than the value so declared, nor unless a greater value is declared, for more than $50.00 or more than the actual value if same is less than $50.00.

The validity of this we left open in *Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 863 n. 3 (1st Cir.1987).

Without noting that we had observed that this was an open question in *Polyplastics*, the district court held it was answered by our opinion in *Hanover Ins. Co. v. Shul-*

man Transp. Enterprises, Inc., 581 F.2d 268 (1st Cir.1978). There we were faced with a bill of lading that limited the carrier's liability to $50.00 "unless a greater value is declared and charges for such greater value paid." This was a COGSA case, a statute uniformly construed as forbidding carriers to limit value below $500, the statutory figure, that will be reduced only if the actual loss proves to be less. In the course of holding the $50.00 figure per se unlawful under COGSA, we added that it was unreasonable as a mere token, and thus against public policy, and hence the provision was invalid in spite of the fact that the shipper had been free to declare a higher value and obtain full protection by paying a higher rate.

It is true that in *Boston & Maine R.R. v. Piper*, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820 (1918), the Court held invalid an agreement whereby, for a lower rate, the shipper's only liability for negligent delay would be for expenses in spite of there being a provision for full damages if a higher rate were paid. This, however, was a special case. The general rule appears in *George N. Pierce Co. v. Wells, Fargo & Co.*, 236 U.S. 278, 35 S.Ct. 351, 59 L.Ed. 576 (1915). There the Court upheld a $50.00 limitation, where a higher rate was available, even though the actual value of the lading was $15,000.

■ The distinguishing feature is one of principle, not of dollars. A disclaimer of liability in consideration of offering a low rate is invalid even if a full value rate was available. *Piper* may appear to be, but is not, an exception. The *Piper* Court held that merely to repay out-of-pocket expenses was equivalent to a disclaimer; it was not an obligation measured by an agreed valuation. Where, however, the rate was based on the extent of the liability, viz., an agreed valuation, as distinguished from non-liability altogether, the *Pierce* Court refused to concern itself with the reasonableness of the low rate. *See also Frederick Leyland & Co. v. Hornblower*, 256 F. 289 (1st Cir.1919).

■ The principle is even more restricted. In *Union Pacific R.R. Co. v. Burke*, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656 (1921), the carrier did not disclaim altogether, but offered a low value rate, with no alternative. In holding this invalid, the Court said, at 322–23, 41 S.Ct. at 284–85,

Thus this valuation rule, where choice is given to and accepted by a shipper, is, in effect, an exception to the common-law rule of liability of common carriers, and the latter rule remains in full effect as to all cases not falling within the scope of such exception. Having but one applicable published rate ... the petitioner did not give, and could not lawfully have given, the shipper a choice of rates, and therefore the stipulation of value in the ... bill of lading ... cannot bring the case within the valuation exception, and the carrier's liability must be determined by the rules of the common law. To allow the contention of the petitioner, would permit carriers to contract for partial exemption from the results of their own negligence without giving to shippers any compensating privilege.

While, strictly, this last sentence might be read as saying that every unreasonably low valuation, particularly a standard $50.00 figure as in the case at bar, was a partial exemption, and should not be saved by an available alternative, the Court's own language rejects this full logic.

Under these rulings defendant acted properly unless, possibly, the alternative rate offered to the $50.00 valuation was so patently unreasonable as to be meaningless, and hence not a real alternative. We have no basis for so thinking here. At least short of that it is not our duty, or province, to resolve the purely factual reasonableness of particular rates. Defendant met the legal requirements.

REVERSED. Judgment for defendant.